## STAPLETON *et al.*, commissioners, *v.* MARTIN *et al.*, trustees; *et vice versa.*

1. Section 2 of the act approved August 19, 1922 (Acts 1922, p. 153), was not repealed expressly or by necessary implication by the act of 1925 (Acts 1925, p. 88).

2. Section 2 of the act of 1922 (Acts 1922, p. 153) is not violative of article 3, section 7, paragraph 8, of the constitution of this State (Civil Code of 1910, § 6437), on the ground that said section 2 contains matter different from that which is expressed in the title of the act.

3. Section 2 of the act of 1922 (Acts 1922, p. 153) is not violative of article 8, section 4, paragraph 1, of the constitution (Civil Code of 1910, § 6579, as amended in 1920), for the reason that said section 2 of the act provides "for a specification of the tax to be levied in the call for said election."

4. The provision of the constitution, article 8, section 4, paragraph 1, as amended, referred to in the preceding division, authorizes two classes of levies of taxes for the support of public schools in counties, municipalities, school districts, and local systems. The first class refers to levy of a tax throughout the county, except in local systems, to be apportioned to the several schools, and is authorized without regard to any election; while the second class refers to levy of a tax in particular localities, and is made to depend upon the result of election in the taxing district at which the vote of "two thirds of those voting" at the election shall favor the levy of the tax before a levy shall be authorized. The taxes provided for in both classes of levy are for support of the schools, and may amount in the aggregate to ten mills on the dollar.

5. Authority under article 8, section 4, paragraph 1, of the constitution, to levy a county-wide tax not less than one nor more than five mills for support of the schools and to supplement said tax in a local school district by levy of a local tax not to exceed five mills when sanctioned by popular vote, is separate from the power to levy a tax to pay a bonded indebtedness incurred under article 7, section 7, paragraph 1, of the constitution, created for the purpose of building a schoolhouse in the district; and the levy of such local tax to pay the bonded indebtedness will not affect the amount leviable under article 8, section 4, paragraph 1, of the constitution for support of the schools.

6. The act of 1922 (Acts 1922, p. 153) requires that the call for the election relating to the additional levy shall specify the amount of the tax to be levied. Where a call for an election under said act fails to specify the amount of the tax intended to be levied, the election is void, and consequently is no authority for the levy of the tax.

7. There being no authority for the levy of the additional tax, the court erred in granting the mandamus absolute.

Nos. 5652, 5653.  June 20, 1927.

Schools and School Districts, 35 Cyc. p. 1002, n. 8; p. 1003, n. 14, 15; p. 1011, n. 90; p. 1012. n. 93.

Statutes, 36 Cyc. p. 1022, n. 1; p. 1029, n. 25; p. 1071, n. 25; p. 1072, n. 29; p. 1074, n. 36; p. 1076, n. 39.

Taxation, 37 Cyc. p. 763, n. 80.

Mandamus. Before Judge Yeomans. Terrell superior court. September 21, 1926.

The trustees of the New Bronwood school district instituted mandamus proceedings against the commissioners of roads and revenues of Terrell County, to compel them "to levy a tax of five mills on the dollar on all taxable property in the New Bronwood school district, as a local tax for supplementing the present school funds . . for the maintenance of the schools of said district." The alleged right to have the tax levied was predicated on an election held in said district on June 10, 1926, held under the act of 1922 (Acts 1922, p. 153) and the provisions of article 8, section 4, paragraph 1, of the constitution of this State (Civil Code of 1910, § 6579), as amended in 1920 by ratification at an election of the amendment to the constitution proposed by the act of 1919 (Acts 1919, p. 66). The pertinent provision of the constitution is as follows: "Authority is granted to the counties and municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation. The proper county authorities whose duty it is to levy taxes for county purposes in this State shall, on the recommendation of the board of education, assess and collect taxes for the support of public schools under its control, not less than one nor more than five mills on the dollar of all taxable property of the county outside of independent local systems, which shall be distributed equitably according to the school population, tax values, the number of teachers and their grade of license, among the public schools therein. An additional levy to that already allowed, not to exceed five mills, shall be permissible in independent local systems, municipalities, or school districts, on a two-thirds vote of those voting. No additional election shall be required to maintain any local school tax now in existence in districts, counties, or municipalities; provided this bill shall not apply to counties having a local school system of taxation adopted prior to the constitution of 1877." The act of 1922 (Acts 1922, p. 153) purported to provide for elections to determine whether an additional tax should be levied under the latter part of the above provision of the constitution.

The petition alleged that the election was held and resulted in favor of the levy of the tax; also the refusal of the respondents to

levy the tax upon recommendation of the county board of education. The respondents filed an answer which admitted a refusal to levy the tax, and as grounds for such refusal set up that the board of education submitted separate requests for three levies of tax for school purposes in said district: (a) A county wide tax of five mills on the dollar, as first provided under the said constitutional amendment. (b) A tax of two and one half mills on the dollar, to pay interest and reduce principal of bonds issued in 1922 by said school district to build a schoolhouse, said tax being within the provisions of said constitutional amendment as decided by the Supreme Court in *Jennings* v. *New Bronwood School District*, 156 *Ga.* 15. (c) The additional tax of five mills on the dollar, which is the subject of controversy. Respondents averred that to make said last-named levy would cause the aggregate of tax levies for said district to amount to twelve and one half mills on the dollar, which would exceed the amount that said constitutional amendment authorizes. The answer also set up: "Said election was null and void, for the further reason that the call for said election, upon which the election was ordered and held, was illegal, for the reason that the tax to be levied was not specified as required by the acts of the legislature, 1922, page 154, section (2)." Section two of the act was as follows: "Be it further enacted, that in the call for said election the additional tax proposed to be levied shall be specified; and successive elections may be held until the additional maximum tax of five (5) mills on the dollar shall be levied as permitted by said constitutional provision." The court refused a motion to strike that portion of the answer quoted above; to which refusal the petitioners excepted pendente lite. The grounds of the motion to strike were: (a) "That said portion of the answer specified constitutes no . . reason why the tax . . should not be levied as requested, in that said section 2 of the acts of 1922, page 154, is unconstitutional, null and void, for the reason that said section is in violation of article 3, section 7, paragraph 8, of the constitution of the State of Georgia, as embodied in Code section 6437, in that said section two of said act contains matter different from what is expressed in the title of said act." (b) "That section 2 of the acts of the legislature therein referred to is unconstitutional, null and void, for the reason that the same is repugnant to the provisions of article 8, sec-

tion 4, paragraph 1, of the constitution of the ·State of Georgia, as embodied in code section 6579, in that said paragraph of the constitution provides that an additional tax, *not to exceed five mills*, shall be permissible on a two-thirds vote of those voting, while section 2 of said act provides for a specification of the tax to be levied in the call for said election." (c) "That section two of the act of 1922 . . was repealed by Code section 1537 as amended by the acts of the legislature in 1925, as found in the published laws, acts 1925, page 88, because said section two is in conflict with section 1537 as amended and referred to herein, in that said section 1537 makes specific provision as to how the rate of taxation shall be fixed in local school districts, and said provision is different from that contained in section 2 of the act of 1922, and therefore section 2 of the act of 1922 can not be set up as a valid defense by the defendants in this case."

The case was submitted to the judge for decision of all questions, upon an agreed statement of facts substantially as follows: (a) The New Bronwood school district of Terrell County was created by the board of education on April 4, 1922, and petitioners are the acting trustees of said school district. (b) On June 9, 1922, an election was held in said district for the purpose of voting on the question of whether said district should issue bonds in the sum of $30,000, for the purpose of building and equipping a schoolhouse in said district. The election resulted in favor of issuance of the bonds. The bonds were issued and sold, and the proceeds used to build and equip a schoolhouse in said district. In 1924 the county school superintendent, in behalf of the school district, requested the commissioners of roads and revenues of the county, and said commissioners in compliance with such request levied five mills on the dollar on all taxable property in said school district, for the purpose of paying the principal and interest that matured in said year on said bonded indebtedness. A similar levy was made for a similar purpose in the year 1925. In 1926 a similar levy was made, except that the amount thereof was two and one half mills on the dollar. (c) In 1926, in addition to the said two and one half mills on the dollar, the commissioners of roads and revenues of the county, on the recommendation of the board of education of the county, had levied a county-wide tax of five mills on the dollar, for school purposes, on all taxable property

in the county outside of the independent local system in Dawson, Georgia. The said levy of five mills was made upon all property in the said New Bronwood school district. (d) On May 20, 1926, a petition signed by more than one fourth of the qualified voters of the New Bronwood school district was presented to the ordinary of the county, requesting that officer to call an election for the purpose of submitting to the registered qualified voters the question of whether the said school district should levy local taxes for the support of the public schools of said district, the said local taxes to supplement the fund received from the State, the amount thereof to be "not exceeding five (5) mills." · In compliance with the petition the ordinary called an election to be held on June 10, 1926, and in the order, which was dated May 20, 1926, provided for the posting of notices of said election in at least three conspicuous places in the district ten days prior to the election. The election was held, and the result was declared by order of the ordinary dated June 11, 1926, and recorded on the minutes of the ordinary. The order recited that 217 votes were cast at the election, and that more than two thirds of the votes cast at the election were in favor of said local taxation. (e) The county board of education recommended the levy of the tax for the year 1926, being: (1) A county-wide tax of five mills. (2) A school-bond tax of two and one half mills. (3) A maintenance tax of five mills, as set out in exhibits (a), (b), and (c) in the answer of the respondents. These were dated August 24, September 1, and September 1, respectively. (f) The commissioners of roads and revenues passed an order, on the recommendation of the county board of education, levying the county-wide tax of five mills and the two and one half mills in the New Bronwood school district, but refused to levy the additional five mills in the New Bronwood school district, based on the election of June 10, 1926.

A judgment was rendered granting a mandamus absolute. The respondents excepted to this judgment; and the petitioners filed a cross-bill of exceptions, in which error was assigned upon the exceptions pendente lite.                                    •

*H. A. Wilkinson,* for plaintiffs in error. *R. R. Jones,* contra.

ATKINSON, J. 1. Article 8, section 4, paragraph 1, of the constitution of this State (Civil Code of 1910, § 6579), as amended in 1920 in the manner provided in the constitution for its amend-

ment, declares: "Authority is granted to the counties and munic-
ipal corporations, upon the recommendation of the corporate au-
thority, to establish and maintain public schools in their respective
limits by local taxation. The proper county authorities whose
duty it is to levy taxes for county purposes in this State shall,
on the recommendation of the board of education, assess and col-
lect taxes for the support of public schools under its control, not
less than one nor more than five mills on the dollar of all taxable
property of the county outside of independent local systems, which
shall be distributed equitably according to the school population,
tax values, the number of teachers and their grade of license,
among the public schools therein. An additional levy to that
already allowed, not to exceed five mills, shall be permissible in
independent local systems, municipalities, or school districts on
a two-thirds vote of those voting. No additional election shall be
required to maintain any local school tax now in existence in dis-
tricts, counties, or municipalities; provided this bill shall not apply
to counties having a local school system of taxation adopted prior
to the constitution of 1877." Under this part of the constitution
the act of 1922 (Acts 1922, p. 153) made provision for elections
to determine whether additional local taxes should be levied in
independent local systems, municipalities, and school districts for
support of the schools. Section 2 of the act provided: "Be it
further enacted, that in the call for said election the additional
tax proposed to be levied shall be specified; and successive elec-
tions may be held until the additional maximum tax of five (5)
mills on the dollar shall be levied as permitted by said constitu-
tional provision." Subsequently an act was passed (Acts 1925,
p. 87) the caption of which was: "An act to amend section 1537
of volume 1 of Park's Annotated Code of Georgia, relative to the
powers and duties of the board of trustees in those districts which
levy a local tax for educational purposes, by enlarging their powers
and duties, and for other purposes." In the body of the act it
was provided: "That section 1537 of volume 1 of Park's An-
notated Code of Georgia be and the same is hereby amended by
inserting immediately after the word 'education,' in line five of
said section, the following words, to wit: 'They shall have the
right and power to use the schoolhouses and school properties in
the district, or permit the same to be used for educational pur-

poses; provided, the use of the schoolhouses and school properties in no way conflicts with the public school or schools in the district,' so that said section when amended shall read as follows: Section 1537. In those districts which levy a local tax for educational purposes, the board of trustees shall make all rules and regulations to govern the schools of the districts, and build and equip schoolhouses under the approval of the county board [of] education. They shall have the right and power to use the schoolhouses and school properties in the district, or permit the same to be used for educational purposes; provided, the use of the schoolhouses and school properties in no way conflicts with the public school or schools in the district. They shall have the right to fix the rate of tuition for non-resident pupils, and to fix the salaries of the teachers. They shall receive from the county board of education the share of public-school funds apportioned to the district by the county board of education. They shall determine the amount necessary to be raised by local tax on all the property of the district. The secretary of the board of trustees of said district, with the aid of the county school commissioner of said county, shall ascertain from the tax returns made to the tax-receiver, and from the tax made to the comptroller-general, the total value of all the property in said district subject to taxation for county purposes, and a regular digest of all such property in said school district shall be made by said secretary in a book furnished by the board of trustees and kept for that purpose. At or before the time of fixing the rate of taxation for said county, the secretary of each local board of trustees, with the aid of the county school-commissioner, shall levy such rate on the property thus found as will raise the total amount to be collected; provided, that such rate shall not exceed one half of one per cent. The county school commissioner of each county, at or before the time for fixing the rate of said county by the ordinary thereof, or the county board of commissioners, as the case may be, shall certify to the said ordinary, or said board of commissioners, as the case may be, and to the comptroller-general of the State the rate of taxation fixed for each school district in the county, and said taxing authority of said county shall levy such special tax at the same time and in the same manner as is now prescribed for the levying taxes for county purposes. A copy of the special tax digest of said local

tax district shall be furnished by the secretary of the local board of trustees to the tax-collector of the county." By section 2 all laws and parts of laws in conflict with the provisions of this act were repealed.

It is insisted by the petitioners that this act of 1925 repealed the above-quoted section 2 of the act of 1922. Section 1537 of Park's Code, referred to in said act of 1925, was taken from Acts 1906, p. 61, and all that the amending act of 1925 did to the said act of 1906 was to add to its provisions: "They shall have the right and power to use the schoolhouses and school properties in the district, or permit the same to be used for educational purposes; provided the use of the schoolhouses and school properties in no way conflicts with the public school or schools in the district." This did not expressly repeal section 2 of the act of 1922. Repeals of statutes by implication are not favored, and are recognized only where they arise necessarily from a proper construction of the provisions of a repealing act. Considered in connection with the act which it is insisted was repealed, there is no such repeal implied in this case.

2. The caption of the act of 1922 (Acts 1922, p. 153) is: "An act to provide for the election prescribed by paragraph 1, section 4, article 8 of the constitution of the State of Georgia, to determine whether a levy for public school taxes shall be made additional to the levy of the maximum tax of five (5) mills on the dollar, allowed by the said constitutional provision to be made on recommendation of boards of education without an election; and to provide how said additional tax shall be levied when authorized by the necessary vote." Section 1 of the act provides for call of elections under the provisions of the constitution referred to in the caption. For convenience section 2 of the act is again quoted: "Be it further enacted, that in the call for said election the additional tax proposed to be levied shall be specified; and successive elections may be held until the additional maximum tax of five (5) mills on the dollar shall be levied as permitted by said constitutional provision." The language of the caption, "an act to provide for the election," etc., is sufficient to indicate to the members of the legislature that the body of the act will contain provisions appropriate for the call of elections under the specified provisions of the constitution. Authority to call the elec-

tion would naturally include provisions consistent with the constitution as to how the call should be made, and what should be included in it. In this view section 2 of the act of 1922 is authorized by the language in the caption, and therefore is not violative of article 3, section 7, paragraph 8, of the constitution of this State (Civil Code of 1910, § 6437), which declares that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," on the ground that it contains matter different from that which is expressed in the title of the act.

3. The provision of article 8, section 4, paragraph 1, of the constitution of this State (Civil Code of 1910, § 6579), hereinbefore set out in the first division, authorizing "an additional levy" of taxes "on a two-thirds vote of those voting," includes the language "not to exceed five mills." This provision does not contain a minimum limit of the amount of tax that might be provided for, or specify any particular amount, but only expresses a maximum amount that can not be exceeded. It was thus left to the legislature to provide how and in what manner taxes might be levied under that provision of the constitution, not exceeding the maximum amount of five mills on the dollar. This being so, the above-quoted provisions of section 2 of the act of 1922 are not violative of said provision of the constitution on the ground that section 2 of the act provides "for a specification of the tax to be levied in the call for said election."

4. The provision of the constitution, article 8, section 4, paragraph 1, as amended, quoted in the first division of this opinion, authorizes two classes of levies of taxes "for support of schools." The first class refers to the levy of a tax throughout the county except in local systems to be apportioned to the several schools, and is authorized without regard to any election; while the second class refers to a levy, additional to the first, of a tax of the same character and for the same purpose in designated subdivisions of the county, which is made to depend upon the result of an election. Authority to make a levy of the second class is made to depend upon the result of an election in the particular taxing district, at which the vote of "two thirds of those voting" in favor of the levy of the tax shall be necessary to authorize the levy. This provision of the constitution authorizes both classes of levy of a

tax for support of the schools, which two classes of levy combined may amount in the aggregate to ten mills on the dollar. See *Smith* v. *Tolbert,* 160 *Ga.* 268 (4) (127 S. E. 868).

5. Authority to levy taxes up to the limit of ten mills on the dollar, for support of the schools as above indicated, is not affected by the existence of authority to levy a tax in a school district for payment of interest and reduction of principal on school bonds maturing throughout a series of years, previously issued by the school district for the purpose of building a schoolhouse. Bonds of that character represent debt, provision for the making of which is extended to counties, municipal corporations, and "political divisions" of the State by article 7, section 7, paragraph 1, of the constitution (Civil Code of 1910, § 6563), and provision for which is made in sections 143-145 of the Code of School Laws of this State (Acts 1919, pp. 345-347). No such debt can be made by a political division "without the assent of two thirds of the qualified voters thereof." This provision of the constitution confers limited power to create debt, but it is not a limitation of the taxing power of the State. *Commissioners* v. *Porter Manufacturing Co.,* 103 *Ga.* 613 (30 S. E. 547). The constitution having thus conferred limited power to create debt, the legislature may provide means for paying debts created in conformity with the constitution, by taxation, in the absence of other constitutional limitation. Article 8, section 4, paragraph 1, of the constitution (Civil Code of 1910, § 6579) confers limited power upon counties to levy tax "for the support of public schools" in school districts, "on a two-thirds vote of those voting" at an election to be held in the district. This provision of the constitution should be construed in the light of article 7, section 7, paragraph 1, supra, and so construed is not a limitation on the power to tax for payment of a debt. The limitation extends only to taxation "for support of the schools." Where a debt is created under the first-mentioned provision of the constitution after a vote of two thirds of all the qualified voters of the district to be affected, it was recognized by the framers of the constitution that the debt should be paid. It was left for the legislature to provide for payment of the debt by taxation. It was not so in the framing of article 8, section 4, paragraph 1. In that provision the power to tax, not for payment of a debt, but "for support of the public schools," was expressly authorized and limited

to that purpose, to be exercised in the first instance to the extent of five mills without any election, and in the second instance to the extent of five mills upon an election at which "two thirds of those voting" at the election vote in favor of the tax. In making provision for payment of debts incurred by issuance and sale of bonds for building schoolhouses under authority of article 7, section 7, paragraph 1, of the constitution, section 145 of the Code of School Laws (Acts 1919, p. 347), as amended by act of 1921 (Acts 1921, p. 228), after making provisions relative to payment of principal and interest on schoolhouse bonds, declared: "this to be in addition to the general tax for the maintenance of the schools of said territory." So it is clear that the levy of a tax to reduce principal and pay interest on schoolhouse bonds issued as above indicated is a separate matter, and does not affect the amount of tax that might be levied for support of the schools. A decision of this question was left open in the case of *Warthen* v. *English,* 158 *Ga.* 210 (123 S. E. 137). In *Jennings* v. *New Bronwood School District,* 156 *Ga.* 15 (118 S. E. 560), it was held that section 143 of the Code of School Laws (Acts 1919, p. 345), as amended by act of 1921 (Acts 1921, p. 221), was not in conflict with article 8, section 4, paragraph 1, of the constitution (Civil Code of 1910, § 6579) as amended by act of 1919 (Acts 1919, p. 66), ratified November 2, 1920. This ruling was in response to an attack upon the constitutionality of the statute. Sections 143 and 145 of the act of 1919 as amended provided machinery for the issuance of the bonds and levy of the tax to pay them. The legislation authorizing the creation of the debt was under article 7, section 7, paragraph 1, of the constitution. Those statutes did not violate article 8, section 4, paragraph 1, of the constitution, because that provision of the constitution did not refer to the matter of creating a debt for building schoolhouses, but only authorized and limited the power of local taxation "for support of the schools." In that case it was said, by way of argument: "This section of the constitution therefore furnishes specific authority for the levy of the additional tax by a school district, not to exceed five mills, under the conditions stated." The words thus quoted from the decision are not to be construed as a ruling that this provision of the constitution furnishes specific authority for levy of a tax for payment of debts represented by school bonds.

The "additional tax" referred to in the above excerpt was, as indicated by the words in the next succeeding sentence, the local tax authorized by that provision of the constitution to be voted for in the district for support of the schools, supplementary to the county-wide tax. The language of the next succeeding sentence follows: "The constitution recognizes that in some districts it might be desired to devote a sum in addition to the county levy for the maintenance of the public schools in such district, and therefore it provides specifically for the additional levy."

6. Under article 8, section 4, paragraph 1, of the constitution as amended, the proper county authorities may be authorized, without any election, to collect the taxes for support of the public schools from all taxable property in the county outside of independent local systems, amounting to "not less than one nor more than five mills on the dollar." In addition to this tax said county authorities may, in independent local systems, municipalities, or school districts, levy and collect a tax upon all of the property in a district on a two-thirds vote of those voting, the amount of such tax "not to exceed five mills" on the dollar. In conformity with this latter clause of the constitution, the act of 1922 (Acts 1922, p. 153) was adopted. The caption of the act follows: "An act to provide for the election prescribed by paragraph 1, section 4, article 8 of the constitution of the State of Georgia, to determine whether a levy for public school taxes shall be made additional to the levy of the maximum tax of five (5) mills on the dollar allowed by the said constitutional provision to be made on recommendation of boards of education without an election; and to provide how said additional tax shall be levied when authorized by the necessary vote." Section 2 of act provided: "That in the call for said election the additional tax proposed to be levied shall be specified; and successive elections may be held until the additional maximum tax of five (5) mills on the dollar shall be levied as permitted by said constitutional provision." It will be perceived that article 8, section 4, paragraph 1, of the constitution, providing for the additional levy not to exceed five mills for the support of public schools in school districts, does not put a minimum limit upon such levy, but contemplates as small a levy in the school district as may be necessary. So, in providing for the election to determine whether a school tax should

be levied under this provision of the constitution in school districts, it was provided in section 2 of the act of 1922, supra, that in the call for the election the additional tax proposed to be levied "shall be specified," and it was further provided that successive elections may be held until the maximum amount specified in the constitution had been attained. This shows a clear legislative intent to require the call for the election to state, for the information of the voters, the amount of the proposed tax, as a condition prerequisite before an election could be held. The form for the call of the election and other substantive contents of the call were left to the discretion of the county authorities, but relatively to the amount of the proposed tax it was expressly declared in the statute that the amount thereof should be specified in the call. In these circumstances a call that did not specify the amount would not be a call for an election within the meaning of the statute, and an election in pursuance of the supposed call would be void. Before the taxing power could be exercised there should be strict compliance with the statutes under which it is proposed to exercise the power. The call for the election stated that the amount of the proposed tax was "not exceeding five mills." This was not a specification of the amount within the meaning of the statute. The statute contemplated the naming of some particular portion not exceeding the limit of five mills specified in the constitution. This is necessarily true in view of the further provision in the statute as to successive elections until the limit of five mills as allowed by the constitution has been attained. As the election was void, there was no authority for the levy of the tax.

7. The ruling announced in the seventh headnote does not require elaboration.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except*

GILBERT, J., concurring specially, and dissenting in part.

1. I concur in the ruling in headnote 1, because the act of 1925 purports to amend Park's Code but does not mention or undertake to amend the official Code or any act of the General Assembly. I do not wish to be committed to the view that an act to amend a private publication, even one of so concededly excellent a character as that mentioned, will amount to an amendment of the law of Georgia. It seems to me that a number of similar publications

might be mentioned, an effort to amend any of which would indicate conclusive reasons why such an act would amount to a nullity.

2, 3. I concur in the rulings made in the second and third headnotes.

4, 5. I am of the opinion that the language used in the constitution, providing a tax fund "for support of the schools," should be construed to include the purchasing or constructing of school buildings and grounds and all other property necessary for maintenance and support of schools. It seems to me that a limit to the tax which may be imposed by a school district is found in our constitution, paragraph 1, section 4, article 8, as amended in 1920. Ga. Laws 1919, p. 66. That provision of the constitution, after providing for a tax levy in counties and municipal corporations, is: "An additional levy to that already allowed, *not to exceed five mills* [italics mine], shall be permissible in . . school districts on a two-thirds vote of those voting." I agree that paragraph 1, section 7, article 7 (Civil Code of 1910, § 6563) does not provide a limitation on the amount of such taxation. It merely provides for the creation of the debt. But the constitution (Civil Code of 1910, § 6564) provides that before such bonded indebtedness under the constitution shall be incurred there must be provision for the assessment and collection of a tax to pay principal and interest on the same. This means, of course, before the bonds are issued. *Oliver* v. *Elberton*, 124 *Ga.* 64 (52 S. E. 15). Thus we see that the framers of the constitution undertook to make certain that a tax would be levied to pay off bonded indebtedness before any bonds could find their way into the hands of purchasers. In each case whether provision for the tax can be made depends in turn on the constitution. If provision for the required tax can not be made within the limitation of the constitution, then the bonds dependent upon the tax levy can not be issued. "No tax can be levied in a local school district unless authorized by popular vote as provided by the amendment to the constitution, ratified November 2, 1920 (Acts 1919, p. 66)." *Powell* v. *Hall Hdw. Co.*, 156 *Ga.* 614 (1a) (119 S. E. 595); *McMillan* v. *Tucker*, 154 *Ga.* 154, at p. 170 (113 S. E. 391); *Jennings* v. *New Bronwood School Dist.*, 156 *Ga.* 15 (2) (supra); *Brown* v. *Martin*, 162 *Ga.* 172, at p. 178 (132 S. E. 896). In the case of *Lindsey* v. *Wall*, 149

*Ga.* 617 (101 S. E. 537), no constitutional question was involved. The court expressly so stated.

6, 7. I concur in the rulings made in the sixth and seventh headnotes, upon which the judgment is reversed.